# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **S.H. and E.H.**

**No. 19-1170** (Harrison County 19-JA-57-2 and 19-JA-58-2)

**FILED**
**February 2, 2021**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father N.H., self-represented litigant, appeals the Circuit Court of Harrison County's December 12, 2019, order imposing disposition pursuant to West Virginia Code § 49-4-604(c)(5) with regard to S.H. and E.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Julie Garvin, filed a response on behalf of the children also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that his counsel was ineffective, that the children's guardian's performance was lacking, that there were procedural errors during the proceedings below, and that there was insufficient evidence to support his adjudication and disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2019, the DHHR took emergency custody of petitioner's children after receiving a recorded conversation between S.H. and petitioner. In the recording, petitioner "was on a tirade that was very abusive [and] belligerent" and told S.H. that she was a "prisoner" after the child asked for permission to attend church. A hearing on the matter was held, and the circuit court ratified the emergency custody, finding that the children were in imminent danger and were subjected to "extreme verbal abuse with the use of foul language and threats of imprisonment . . . including [petitioner's] constant mood changes with delusions of people out to get him." The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

DHHR subsequently filed a child abuse and neglect petition, which was filed by order entered on April 9, 2019.

Petitioner underwent a psychological evaluation in May of 2019. According to the evaluating psychologist, petitioner pontificated about medical marijuana laws and had to be redirected several times. Specifically, petitioner claimed there was little factual basis for the case against him and opined that he was being targeted for openly speaking about "drug policy and marijuana." He stated, "[t]hat's the backdrop of why I am here is because my fight against drugs and being a child advocate because of the opiate epidemic." Petitioner detailed a long history of court involvement wherein his children were allegedly removed from his care and placed into knowingly dangerous situations, including a time when a court demanded that petitioner "turn the children over to two drug dealers, even though they had no relation to the children." Further, petitioner denied that S.H. could have recorded their conversation because "[t]here were only two electronic devices in my home and there were no recordings on them." Petitioner further claimed that he was not concerned about the results of the proceedings because no recording existed, and he had not abused his children.

Based upon testing, the psychologist diagnosed petitioner with delusional disorder and unspecified personality disorder with paranoid and obsessive-compulsive features. While the psychologist rated petitioner's prognosis as guarded, he opined that petitioner did "not have the parental capacity to care, protect and change in order to provide adequately for his children at this time." Additionally, the psychologist stated that petitioner had no insight into his mental illness and needed long-term therapy in order to become more reality based. Petitioner had difficulty separating fiction from reality and the psychologist stated that "[h]is grandiosity impairs his judgment and puts his children at risk due to his unpredictable behavior."

In June of 2019, the circuit court held an adjudicatory hearing. Several exhibits were admitted into evidence, including records of petitioner's drug screens, the psychological evaluation report, the audio recording of the conversation between petitioner and S.H., and the recordings of interviews performed of both children at the Harrison County Child Advocacy Center ("CAC"). The evaluating psychologist, a forensic interviewer with the CAC, S.H.'s cheerleading coach, and petitioner testified. Testimony established that, during her CAC interview, S.H. reported that petitioner made her quit her cheerleading team because "he believed the people involved in the cheer squad wanted her to sell drugs." Petitioner also believed that "there were people 'out there' and they had been following them." S.H. also indicated that petitioner "screams and cusses into his phone and there was no one on the phone. He believes that people are listening in by means of the phone." Testimony regarding E.H.'s CAC interview indicated that petitioner had previously said that "'they' were putting things into his cell phone to listen into his calls and spy on him."

The evaluating psychologist testified as to his evaluation of petitioner and his resulting opinions and recommendations. The psychologist explained that petitioner largely wanted to talk about drug policy even though it was not relevant to the questions being asked. Petitioner also denied verbally abusing S.H. and claimed that "the only problems with his children are that other people are advocating against him." The psychologist opined that petitioner's reaction to S.H. in the recording was "extreme and abusive" and that petitioner appears to have been engaging in

paranoid ideation. The psychologist reiterated his guarded prognosis for petitioner's attaining minimally adequate parenting.

Petitioner's testimony established that he did not deny yelling into the phone and stated that "it is [his] one flaw and resulted from managing and running a business." Petitioner also did not deny that it was his voice yelling at S.H. in the recording but testified that he only has two recording devices in the home, which did not contain the recording, and questioned how the recording was made. While petitioner claimed that he made S.H. quit her cheer team because of financial issues, the cheerleading coach testified that she covered all of the child's cheer costs. Petitioner also testified that he was an advocate for the legalization of marijuana and spent his waking hours sending e-mails and making phone calls to government officials. Petitioner denied any mental health conditions, paranoia, or delusions and claimed that he was being silenced by the court system. Despite having no bearing on the questions being posed to him, petitioner testified regarding the death of the children's mother. He testified that without having seen her death certificate, he could not "prove" to himself that she was deceased and that he told his children that "they are keeping their mother alive and using her identity to sell drugs."[2] The circuit court found that petitioner's reasoning process did not appear to be based in reality, that petitioner believed everything he says is reality, and that he refused to undergo a medical evaluation to determine whether there was an organic reason for his behaviors, such as brain trauma or other disease. Ultimately, the circuit court adjudicated petitioner as an abusing parent based upon finding that petitioner had mental health issues which led to the abuse and neglect of the children, including subjecting the children to unsafe conditions and emotionally and psychologically abusing them. Subsequent to the adjudicatory hearing, the circuit court appointed petitioner a guardian ad litem.

In September of 2019, the circuit court held a dispositional hearing wherein it took judicial notice of the evidence presented at prior hearings, as well as the numerous letters written by petitioner to the court. A service provider testified that petitioner was offered supervised visitation and parenting and adult life skills classes. According to the service provider, petitioner attended all supervised visits with the children and seemed to have a bond with them. However, petitioner refused to participate in any parenting or adult life skills classes, and those services were eventually closed due to his noncompliance. The service provider stated that petitioner left a voicemail on his phone that "this was a conspiracy," and opined that petitioner never acknowledged any deficiencies or mental health issues. A Child Protective Services ("CPS") worker testified that she attempted to set up services with petitioner via phone calls and text messages but that petitioner would respond that he did not need services and also requested that she "quit talking to him."

At the close of evidence, the circuit court imposed disposition pursuant to West Virginia Code § 49-4-604(c)(5). The circuit court noted that petitioner suffered from mental health issues which have increased over the past two years and that he could not parent at that time because he did not believe he had any mental health issues and refused services for the same. The circuit court further noted that, in imposing a less-restrictive alternative to the termination of petitioner's parental rights, it was taking the children's ages and the bond they had with petitioner into account. The circuit court found that petitioner could petition the circuit court for custody of the children if

---

[2]Although unclear from the adjudicatory order, the DHHR posits that petitioner testified that it was the government that was keeping the mother alive in order to use her identity.

3

and when he sought mental health treatment in the future. Petitioner appeals the circuit court's December 12, 2019, dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

At the outset, we dispense with petitioner's claims that his counsel erred in failing to raise "defenses" regarding "Open Device Recording," failing to ensure that petitioner met with his guardian ad litem prior to his adjudicatory hearing,[4] presenting false documents in court, and failing to question the petition's contents. Petitioner's arguments in this regard are most aptly construed as raising claims that his counsel's performance was deficient or ineffective. Having reviewed the record, we find that petitioner's counsel provided effective assistance.[5] However, this Court has never recognized a claim of ineffective assistance of counsel in an abuse and neglect proceeding, and we decline to do so here.

Next, we find that several claims made by petitioner are unfounded and are not supported by the record. For instance, petitioner alleges that a preliminary hearing was never held and that the "original complaint of abuse was never substantiated" because the "original complainant" never testified. However, the record contains an order ratifying emergency custody of the children in which the circuit court found that remaining in the home was contrary to the children's welfare due to issues of extreme verbal abuse and threats of imprisonment. The record also contains an order from the preliminary hearing, which petitioner failed to attend despite having been

---

[3]The children's mother is deceased. The permanency plan for the children is guardianship by family members.

[4]Petitioner was not granted a guardian until after his adjudicatory hearing.

[5]In the same vein, petitioner assigns as error the circuit court's refusal to grant him new counsel. However, petitioner fails to cite to the record establishing that he requested new counsel. Moreover, given that we find no error in petitioner's counsel's performance below, along with petitioner's failure to adequately support his claims, we likewise find no error in this regard.

personally served with the notice. Due to his nonappearance, the circuit court found that petitioner waived his preliminary hearing and no further evidence was presented. Petitioner also raises several claims regarding the children's guardian, including that she failed to speak to the children prior to the adjudicatory hearing, provided deceitful excuses for missing hearings, and submitted false documentation. However, none of these assertions are based in fact and are belied by the record. Petitioner additionally alleges that there were conflicts of interest in this case due to his deceased ex-spouse's alleged affiliation with a convicted drug dealer and the Harrison County Circuit Court Clerk's previous employment. However, petitioner failed to file any motions for disqualification based on these allegations and presented no evidence regarding these allegations. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009).

Petitioner sets forth another assignment of error claiming that the circuit court failed to follow Rules 21 and 49 of the West Virginia Trial Court Rules in appointing guardians ad litem and further claims that his guardian failed to speak to him until after adjudication. We first note that the West Virginia Trial Court Rules do not contain a Rule 49. Further, Rule 21 explicitly states that it "does not apply to guardians ad litem appointed in abuse and neglect proceedings." Moreover, the record demonstrates that petitioner was not granted a guardian until after evidence of his mental health issues was presented at adjudication. As such, petitioner's guardian could not have spoken to him prior to adjudication as she was not appointed until after that hearing. Accordingly, this assignment of error is also without merit.

We now turn to petitioner's remaining assignments of error, which deal with the evidence presented throughout the proceedings, petitioner's claims of "Open Device Recording" and "WV Drug Policy," and adjudication and disposition. Petitioner claims that he became the focus of the underlying CPS investigation because of his assumed affiliation with his ex-spouse, the mother of the children. Petitioner also states that the nature of the evidence changed throughout the proceedings. He claims that "'open device recording' has been and is used as personal attacks on those targeted by Drug Policy Corruption." Petitioner states that citizens should be assured that evidence will not be tainted or improperly produced, edited, or transmitted and that "WV Drug Policy is centered on the NC, VA, and MD pipeline ensuring the perpetual violation of . . . marijuana crossing state lines as well as remote control of documents and electronic recordings." Petitioner also states that the DHHR removes children from their homes without justification in order to increase their own profits. For example, petitioner states that his cell phone records indicate no calls were made on the date of the recording of the conversation between him and S.H., presumably indicating that he was recorded by a third party outside of his home. Based on these assertions, petitioner concludes that his adjudication and the termination of his parental rights were in error.

First, petitioner's claims that he was targeted by CPS for his affiliation with his ex-spouse or his alleged policy work on legalizing marijuana are completely baseless. Petitioner provides absolutely no evidence regarding his ex-wife's alleged work as a confidential informant, nor does he provide any support for his assertions regarding a "drug pipeline" or the trafficking of children

by the DHHR. This failure is in direct contravention of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requiring that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered on December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, this Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. *Id.* "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). Because petitioner's brief with regard to these assertions is inadequate and entirely fails to comply with Rule 10(c)(7) of the Rules of Appellate Procedure, we decline to address these issues.

Second, there is no indication that the evidence presented changed throughout the proceedings. The case was initiated after S.H. presented an audio recording of petitioner yelling and cursing at her to a CPS worker. The DHHR filed a request to ratify emergency custody based on the audio recording. At the adjudicatory hearing, the audio recording was admitted into evidence, along with additional evidence of petitioner's mental health issues and the children's CAC interviews. Ultimately, the circuit court imposed disposition based upon evidence that petitioner had severe mental health issues that affected his ability to parent and had not been remedied during the proceedings. Therefore, the evidence did not change during the course of the proceedings.

Regarding adjudication, petitioner specifically states that the "[e]vidence brought forth failed to meet or indicate the child[ren]'s health or wellbeing was endangered." West Virginia Code § 49-4-601(i) requires the DHHR, in a child abuse or neglect case, to prove "conditions existing at the time of the filing of the petition . . . by clear and convincing evidence." Pursuant to West Virginia Code § 49-1-201, an abused child is one whose health or welfare is being harmed or threatened by "[a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict . . . mental or emotional injury, upon the child." Moreover, a neglected child is one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, supervision, medical care, or education." Here, evidence established that petitioner had severe mental health issues which he repeatedly denied and refused treatment for. Petitioner engaged the children with his delusions and perpetuated his belief that his deceased ex-wife, the children's mother, was still alive and selling drugs. Further, petitioner subjected the

children to extreme verbal abuse and threats of imprisonment. Ultimately, the circuit court adjudicated petitioner as an abusing parent based upon finding that petitioner had mental health issues which led to the abuse and neglect of the children, including subjecting the children to unsafe conditions and emotionally and psychologically abusing them. Based upon this evidence, we find no error in the adjudication of petitioner as an abusing parent.

Lastly, we address petitioner's disposition. West Virginia Code § 49-4-604(c)(5) provides as follows:

> Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

The evidence supports a finding that petitioner is presently unwilling or unable to provide adequately for his children's needs. The record demonstrates that petitioner suffers from serious mental health issues which affect his ability to care for his children. Despite the urging of the DHHR, the circuit court, petitioner's evaluating psychologist, and the guardian to undergo a physical exam and seek treatment, petitioner repeatedly refused to acknowledge any deficiency in his mental health or his parenting and refused to seek treatment. Indeed, at disposition petitioner testified that he had no mental health issues, that he was a good parent, and that he had no deficiencies to correct. While we are not unsympathetic to petitioner's situation, he has failed to demonstrate that he is able to adequately care for the children at this time. Given the evidence presented, petitioner's potential to improve if he were to seek mental health treatment in the future, along with the children's ages and bond with petitioner, we find that the circuit court did not err in imposing disposition pursuant to West Virginia Code § 49-4-604(c)(5).

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 12, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: February 2, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice William R. Wooton